**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**July 18, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

JEFFREY J. SPERRY,

    Plaintiff - Appellant,

v.

RAYMOND ROBERTS, Retired
Secretary, Kansas Department of
Corrections, in his individual and official
capacity; JOHNNIE GODDARD, Kansas
Department of Corrections, in his
individual and official capacity; REX
PRYOR, Retired Warden, Lansing
Correctional Facility, in his individual and
official capacity; JAMES
HEIMGARTNER, Warden, El Dorado
Correctional Facility, in his individual and
official capacity; LINDSEY
WILDERMUTH, Unit Team Manager,
Lansing Correctional Facility, in her
individual and official capacity,

    Defendants - Appellees.

No. 21-3151
(D.C. No. 5:18-CV-03120-HLT-GEB)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **MATHESON**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

_____

Jeffrey J. Sperry, a Kansas prisoner proceeding pro se, sued defendants

Raymond Roberts, Johnnie Goddard, Rex Pryor, James Heimgartner, and

Lindsey Wildermuth, in their individual and official capacities, for failing to pay him

the interest earned on his inmate trust account.[1]  The district court entered judgment

in favor of defendants and Mr. Sperry now appeals.  Exercising jurisdiction under

28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

Mr. Sperry, an inmate in the custody of the Kansas Department of Corrections

(KDOC), sued 24 KDOC defendants, alleging claims related to his conditions of

confinement.  After he filed an amended complaint, the district court severed four

claims into separate lawsuits.  One of them led to this appeal and involves a single

count.

### A.  *Alleged Claims*

In that count, Mr. Sperry alleged that from 1997 to February 2012, the interest

he accrued was added to his inmate trust account each month, but starting in February

---

[1] Under Kan. Stat. Ann. § 76-173, "all moneys belonging to and held by the [corrections] institution for the use and benefit of each individual who is a[n] inmate of the institution . . . shall deposit such moneys in one or more interest-bearing accounts. . . . Such moneys shall constitute a[n] . . . inmate trust fund."

"The moneys of each trust fund" may be invested in "certificates of deposit" but "shall continue to be a part of the trust fund from which the money originates."  *Id.* § 76-175(a).  "Interest earned on moneys invested" in the certificates of deposit "shall be regularly prorated . . . and credited to the . . . inmate . . . on the basis of the amount of money . . . inmate . . . has in the trust fund."  *Id.* § 76-175(b).

2012, the Defendants started embezzling the accrued interest and stopped adding it to his account. He asserted the Defendants (1) violated the Fifth Amendment Takings Clause, (2) violated his rights to due process and equal protection under the Fourteenth Amendment, (3) embezzled his funds under the Racketeer Influenced and Corrupt Organizations (RICO) Act, and (4) conspired to violate his civil rights under 42 U.S.C. § 1985. He also alleged the state-law torts of (1) conversion, (2) outrageous conduct, (3) breach of fiduciary duty, and (4) negligence. For relief, he sought an injunction ordering the Defendants to "immediately start paying plaintiff his proper interest on his inmate trust accounts," ROA at 32, and asked for monetary damages "in the total amount of interest embezzled from every inmates' [sic] trust account," *id.* at 33.

## B. *Martinez Report*

The district court ordered Defendants to prepare a *Martinez* report to address Mr. Sperry's allegations.[2] In response, the KDOC submitted a report explaining that it regulates inmate trust funds through Internal Management Policy and Procedure 40-103. Consistent with that policy and state law, KDOC allocates interest on a regular basis to each inmate's trust fund account. Specifically, "[i]mmediately upon

---

[2] "When the pro se plaintiff is a prisoner, a court-authorized investigation and report by prison officials (referred to as a *Martinez* report) is not only proper, but may be necessary to develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (citing *Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir. 1978) (en banc) (per curiam)).

close of the monthly interest earning period, interest earned on inmate trust fund *less the applicable bank service fee* shall be credited to each active account as of the date of allocation in the same proportion as the average daily balance of the investment group." ROA at 151 (emphasis added). The report further explained that from February 2012 through June 2017, the amount of bank service fees charged on the inmate trust accounts exceeded the interest earned from those accounts, so Mr. Sperry did not receive any interest during that time. In June 2017, the interest earned from Mr. Sperry's account once again exceeded the account's service fees, so interest income started to be credited in his account.

## C. *First Order*

Defendants filed a motion to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment. The district court granted in part and denied in part the motion to dismiss. It dismissed the federal claims for monetary damages against defendants in their official and individual capacities based on Eleventh Amendment immunity and qualified immunity, respectively. It also determined that it lacked jurisdiction over Mr. Sperry's state-law claims. But it concluded Mr. Sperry could proceed on his federal claims for injunctive relief. We refer to this as the "first order."

## D. *Second Order*

Mr. Sperry moved for reconsideration of the first order,[3] and Defendants moved for summary judgment on the federal claims for injunctive relief. Mr. Sperry then moved to strike the second motion for summary judgment and also filed a separate response.

In its order addressing the pending motions, the district court first noted Mr. Sperry could seek injunctive relief against Defendants only in their official capacities. It next granted summary judgment for Defendants Goddard, Pryor, Heimgartner, and Wildermuth because the uncontroverted facts showed they had no authority or control over Mr. Sperry's inmate trust fund account. As for Mr. Sperry's federal claims for injunctive relief against Defendant Roberts, the court first determined Mr. Sperry had failed to exhaust his Fourteenth Amendment, RICO Act, and § 1985 claims. The court next determined he had failed to show a triable issue of fact on his Fifth Amendment Takings Clause claim.

In sum, the district court denied Mr. Sperry's motion for reconsideration and motion to strike and granted Defendants' motion for summary judgment. We refer to this as the "second order." This appeal followed.

---

[3] Mr. Sperry styled his motion as a motion to alter or amend the judgment. But the district court explained that its order did not dispose of all of Mr. Sperry's claims, so it was not a final judgment. The court further explained that Mr. Sperry's motion was "an interlocutory motion invoking the Court's discretionary authority to review and revise interlocutory rulings before entry of final judgment," which the court would treat as a motion for reconsideration. ROA at 306.

## II. DISCUSSION

We review de novo the district court's first order granting Defendants' motion to dismiss, *see Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1294 (10th Cir. 2003) ("Dismissals under either [Rule 12(b)(1) or 12(b)(6)] are generally reviewed de novo."). We also review de novo its second order granting Defendants' motion for summary judgment, *see Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review for abuse of discretion the district court's denial of a motion to strike. *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1129 (10th Cir. 2011).

### A. *First Order Challenges*

On appeal, Mr. Sperry contends the district court erred in its rulings in its first order on (1) Eleventh Amendment immunity, (2) qualified immunity, and (3) the state-law claims. We disagree and affirm.

### 1. Eleventh Amendment Immunity

Mr. Sperry argues the district court erred in its first order by dismissing his suit against Defendants in their official capacities based on Eleventh Amendment immunity. He contends he did not seek monetary damages against them in their official capacities and agrees that a damages claim must be brought against them in their individual capacities. He argues he is permitted to seek injunctive relief against prison officials in their official capacities.

6

Mr. Sperry's claim for monetary damages did not distinguish between defendants in their official and individual capacities, *see* ROA at 33. It was therefore appropriate for the district court to dismiss the claim for monetary damages to the extent it was made against defendants in their official capacities. We also agree with the district court that "[Mr. Sperry] misconstrues [the first] order because that order only dismissed [his] federal and state-law claims for <u>monetary damages</u> against Defendants in their official capacities based on Eleventh Amendment immunity." *Id.* at 307. The court "did not dismiss [Mr. Sperry's] federal and state-law claims for <u>injunctive relief</u> based on Eleventh Amendment immunity." *Id.* Instead, it denied Defendants' motion to dismiss the federal claims for injunctive relief and permitted those claims to proceed. Mr. Sperry has therefore failed to show the district court committed any error.

2. **Qualified Immunity**

Mr. Sperry argues the district court erred in dismissing his federal claims for monetary damages based on qualified immunity. "Qualified immunity shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Davis v. Clifford*, 825 F.3d 1131, 1134 (10th Cir. 2016) (quotations omitted). Once a public official claims entitlement to qualified immunity, "the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and . . . (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Id.* at 1135 (quotations omitted). Although the plaintiff must establish both prongs of the

qualified-immunity standard for the suit to proceed, courts may address them in either order. *See* *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019).

Here, the district court started with the second prong, explaining that "for a right to be clearly established, Sperry must either 'identify[] an on-point Supreme Court or published Tenth Circuit decision' or, alternatively, show that 'the clearly established weight of authority from other courts [] have found the law to be as . . . [he] maintains.'" ROA at 220 (quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015)). The district court also explained the question here was narrow: "was it clearly established at the time of Defendants' alleged misconduct (February 2012 to June 2017) that it was unlawful to use interest earned from Sperry's inmate account to pay bank fees associated with his own account." *Id.* Because Mr. Sperry failed to identify any authority showing that Defendants' conduct violated a right that was clearly established at the time of the alleged misconduct, the court determined the Defendants were entitled to qualified immunity.

On appeal, Mr. Sperry asserts the district court erred in ruling "that the law regarding prison officials embezzling, or otherwise taking, prisoners' money was not well established at the times alleged herein (2012-2017)." Aplt. Br. at 3. Defendants argue in response that Mr. Sperry has waived this issue by failing to adequately brief it. Aplee. Br. at 13 (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998)). They contend "[n]either Defendants nor the district court asserted that the law against prison officials embezzling or otherwise taking prisoners' money was not well-established, as Sperry argues," *id.*, and they further contend Mr. Sperry

8

fails to address the narrow question the district court identified. They also argue that he does not attempt to explain how the Supreme Court cases he cites—*Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162-64 (1980), and *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998)—"are analogous to his case, and thus, applicable to his claim." Aplee Br. at 14.

Defendants argue in the alternative that, even if this court considers the merits of Mr. Sperry's argument, we should affirm because "[n]either of the Supreme Court cases on which he relies hold that inmates enjoy unlimited free banking, as well as all of the accrued interest on top of it." *Id.* They therefore assert "[t]he district court rightly determined that Sperry failed to show that Defendants violated a clearly established law on this point at the time of the alleged conduct." *Id.* at 15.

Mr. Sperry has not adequately briefed this issue, but even if he had, his argument that the district court erred falls short on the merits. We agree with Defendants that Mr. Sperry has not pointed to any authority[4] showing the Defendants violated a clearly established right at the time of the alleged misconduct.

3. **State-Law Claims**

In response to Defendants' motion to dismiss, Mr. Sperry asserted the district court had original diversity jurisdiction over his state-law claims because he is a

---

[4] Mr. Sperry also cites to a case from the Kansas Court of Appeals, *Smith v. McKune*, 31 Kan. App. 2d 984, 993 (Kan. Ct. App. 2003). But to determine if a right is clearly established, we look to decisions from federal courts—the Supreme Court, or this court, *see Quinn*, 780 F.3d at 1005, or other federal circuit courts, *see, e.g.*, *Stewart v. Donges*, 915 F.2d 572, 582-83 (10th Cir. 1990) (discussing cases from six other circuit courts and concluding that a right was clearly established based on the

9

Missouri resident and all the defendants are Kansas residents.  Mr. Sperry contends

on appeal that the district court erred in finding it lacked diversity jurisdiction over

his state-law claims based on the amount-in-controversy requirement.

Under 28 U.S.C. § 1332(a)(1), the district court has "original jurisdiction of all

civil actions where the matter in controversy exceeds the sum or value of $75,000,

exclusive of interest and costs, and is between . . . citizens of different States . . . ."

The district court observed that Mr. Sperry did not address the amount-in-controversy

requirement in his response to the motion to dismiss.  The court noted Mr. Sperry's

complaint "seeks monetary damages in the total amount of interest embezzled from

every inmates' [sic] trust account."  ROA at 223 (quotations omitted).  But the court

explained:  "Notwithstanding the fact that Sperry is trying to recover damages

suffered by other inmates (which he is not entitled to do), Sperry's Complaint makes

no mention of how much interest was taken from his account."  Id.  The court

concluded that Mr. Sperry failed to meet his burden to demonstrate the court has

jurisdiction with respect to § 1332's amount-in-controversy requirement.  See Green

v. Napolitano, 627 F.3d 1341, 1344 (10th Cir. 2010).

"To determine whether a party has adequately presented facts sufficient to

establish federal diversity jurisdiction, appellate courts must look to the face of the

---

decisions from the other circuit courts).  Moreover, even if a state case were relevant
to the clearly established inquiry, Mr. Sperry fails to explain how *Smith v. McKune*
establishes that it was unlawful at the time of defendants' alleged misconduct to use
interest earned from his account to pay bank fees associated with his own account.

complaint, ignoring mere conclusory allegations of jurisdiction." *Spring Creek Expl.*

*& Prod. Co. v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1013-14 (10th Cir. 2018)

(quotations omitted).  Mr. Sperry argues the district court failed to count all his

requested relief, which he contends "included $1,000,000.00 in punitive damages."

Aplt. Br. at 4 (citing his complaint (ROA at 34)).  But that page of his complaint is

mostly blank and does not show a requested amount for punitive damages.[5]  *See* ROA

at 34.

Mr. Sperry next argues "courts have consistently held that the

amount-in-controversy calculation must include all of the money the defendants

illegally took from the inmate trust fund . . . ."  Aplt. Br. at 4 (citing *Lovell v. State*

*Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006); *SFF-TIR, LLC v.*

*Stephenson*, 262 F. Supp. 3d 1165, 1198 (N.D. Okla. 2017)).  He contends the district

court erred in concluding he "could not request the repayment of the interest that

should have been paid over to the rest of the inmate population." *Id.*  The cases

Mr. Sperry cites, however, do not support his position.  *Lovell* was a class action and,

---

[5] When considering Mr. Sperry's motion for reconsideration of the first order, the district court explained that "this page of [the complaint] was not properly filed," and that Mr. Sperry failed "to amend or correct his filing."  ROA at 310.  In his argument here on the amount-in-controversy requirement, Mr. Sperry asserts that his motion for reconsideration was "arbitrarily denied."  Aplt. Br. at 5.  He contends the district court "made an unconscionable ruling that the last page of [his] complaint should not be considered and that [he] could not use a motion to reconsider to point out all the erroneous rulings made by the court." *Id.*  To the extent this portion of Mr. Sperry's brief can be read as a challenge to the district court's denial of his motion for reconsideration, we conclude his arguments are inadequately briefed and are therefore waived.  *See Adler*, 144 F.3d at 679.

on the page he cites, the court discussed aggregating the claims of the class members to meet the amount-in-controversy requirement. *See* 466 F.3d at 897. But Mr. Sperry's case is not a class action. Further, it is not clear why Mr. Sperry cites the district court decision in *SFF-TIR*—that case did not even involve the amount-in-controversy requirement. *See* 262 F. Supp. 3d at 1167, 1198. He has therefore failed to show the district court committed reversible error in finding it lacked diversity jurisdiction over his state-law claims.[6]

## B. *Second Order Challenges*

Mr. Sperry further argues on appeal that the district court erred in its second order when it (1) denied his motion to strike the Defendants' second motion for summary judgment and (2) granted summary judgment to the Defendants on his claims for injunctive relief. Again, we disagree and affirm.

### 1. **Motion to Strike Second Motion for Summary Judgment**

Mr. Sperry next asserts the district court erred in denying his motion to strike Defendants' second motion for summary judgment. The district court explained that (1) Rule 12(g) of the Federal Rules of Civil Procedure[7] "does not prohibit a second or

---

[6] In the second order, the district court explained it had resolved all federal claims and it declined to exercise supplemental jurisdiction over any remaining aspects of Mr. Sperry's state-law claims. *See* ROA at 310 n.7; *id. at 320*. Mr. Sperry does not challenge this part of the district court's decision.

[7] Rule 12(g)(2) states: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

12

successive Rule 56 motion for summary judgment," and (2) "Defendants' motion for summary judgment was properly filed before the dispositive motion deadline and raises arguments for which Defendants have not received a ruling on the merits even if previously raised." ROA at 304 n.3.

Mr. Sperry argues without any authority that "Rule 56 motions are clearly included in the purview of rule 12." Aplt. Br. at 5. He fails to address the district court's determination that Defendants could raise arguments in their second motion for summary judgment, even if previously raised, when they had not yet received a ruling on the merits of those arguments. Mr. Sperry has not shown the district court abused its discretion in denying his motion to strike.

### 2. **Second Motion for Summary Judgment on Claims for Injunctive Relief**

Finally, Mr. Sperry argues the district court erred in granting Defendants' second motion for summary judgment on his claims for injunctive relief.

#### a. *Defendants Goddard, Pryor, Heimgartner, and Wildermuth*

In its order, the district court first addressed Mr. Sperry's claims for injunctive relief against defendants Goddard, Pryor, Heimgartner, and Wildermuth, who argued they were entitled to summary judgment based on Eleventh Amendment immunity. The district court explained that for a claim against state officers in their official capacities to qualify for the exception to Eleventh Amendment immunity, the

plaintiff must not only seek prospective injunctive relief,[8] but also "must show that the state official has the power to perform the required act. ROA at 312. These four defendants argued Mr. Sperry could not show they had the power to perform the prospective injunctive relief—to "immediately start paying plaintiff his proper interest on his inmate trust accounts," *id.* at 32—because they had no authority or control over the inmate trust fund accounts.

In his response to summary judgment, Mr. Sperry did not present any evidence to dispute this argument. Instead, he conceded these defendants "do not have direct control over [his] money," but then alleged that "they do have the capacity to initiate procedures to prevent the person in charge of the funds from embezzling them." *Id.* at 286.

The district court concluded that Mr. Sperry did not "meaningfully controvert or provide facts, and has not shown that the narrow exception to Eleventh Amendment immunity saves his claims[;] [i]nstead, the uncontroverted facts show that these defendants have no authority or control over the pooled inmate trust fund account." *Id.* at 312. The court therefore granted summary judgment in favor of these defendants on Mr. Sperry's claims for injunctive relief.

On appeal, Mr. Sperry asserts that "[a]ll of these defendant[s] had the authority to take action to correct the unlawful taking of the interest from the trust account,"

---

[8] *See* Chamber of Com. of U.S. v. Edmondson, 594 F.3d 742, 760 (10th Cir. 2010).

Aplt. Br. at 6, but he points to nothing in the record to support his assertion or otherwise show how the district court erred. We thus affirm the district court's decision to grant summary judgment in favor of these defendants.

b. *Defendant Roberts*

That leaves Mr. Sperry's claims for injunctive relief against Defendant Roberts in his official capacity. The district court first determined that Mr. Sperry failed to exhaust his administrative remedies for his Fourteenth Amendment, RICO Act, and § 1985 claims against Defendant Roberts because his grievance was not particular enough to provide administrators with a fair opportunity to address or investigate any of these claims.[9] Mr. Sperry argues the district court erred because "inmates do not have to cite legal theories during exhaustion of the administrative remedies," Aplt. Br. at 6-7, and his grievances put prison officials "on notice that they were violating [his] Due Process rights to his property (interest earned), that several officials were conspiring to do this, and that their actions were criminal in violation of criminal statutes, including RICO," *id.* at 7. Mr. Sperry's argument fails to quote the language from the actual grievances he filed. We agree with the district court's analysis of the

_____

[9] Mr. Sperry filed a grievance on October 15, 2015. ROA at 47. Although Defendant Wildermuth responded to the grievance on October 25, *see id.*, Mr. Sperry asserted he had not received a response within 10 days and submitted a second grievance on October 26 that repeated the same complaint as his first grievance—that the KDOC had failed to pay interest on the inmate trust fund accounts for several years. *Id.* at 48. Defendant Wildermuth submitted the same response to the second grievance as the first grievance. *Id.* The district court referred to Mr. Sperry filing a grievance in the singular, presumably because the two grievances contained the same complaint, while Mr. Sperry refers to grievances in the plural.

exhaustion issue as more fully stated in its second order, and we affirm the district court's decision to grant summary judgment in favor of Defendant Roberts on these claims.

The district court next determined that Mr. Sperry failed to show a triable issue on his Fifth Amendment Takings Clause claim. The Fifth Amendment prohibits the taking of "private property . . . for public use, without just compensation." U.S. Const. amend. V. The court first found Mr. Sperry "ha[d] not carried his substantial burden of establishing that his property was taken for a public use." ROA at 318. It also found he "fail[ed] to carry his substantial burden of establishing that he was denied just compensation." _Id._ Because we agree with the district court's first conclusion, we need not reach the second.

In his response to the second motion for summary judgment, Mr. Sperry asserted, without any legal or factual support, that "KDOC officials embezzled the interest from the trust fund . . . and took the money to use for other KDOC needs." _Id._ at 287. In concluding he had failed to show his property was taken for public use, the district court observed that Mr. Sperry cited no specific case law on this point and "relie[d] on speculation." _Id._ at 318.

On appeal, Mr. Sperry contends "Defendants . . . readily admit that [his] account earned interest from 2012-2017 and that interest was not paid over to the inmates." Aplt. Br. at 8. He therefore asserts he "has more than met the burden of proving that government officials took his interest." _Id._ But, as the Defendants persuasively argue, Mr. Sperry's assertion "misses the point of the district court's

16

holding" because "[t]he question the district court addressed was not whether the interest was taken, but whether it 'was taken *for a public use*.'" Aplee. Br. at 33 (quoting ROA at 318).

We agree that Mr. Sperry failed to show his interest was taken for a public use as both a factual and legal matter. The undisputed facts from Defendants' summary judgment motion show that KDOC uses the interest earned on inmate accounts to pay the bank fees associated with the accounts and then disburses any remaining interest to the accounts. *See* ROA at 267; *id.* at 272. Mr. Sperry did not offer any facts to support his conclusory assertion that the defendants took the money from the interest "to use for other KDOC needs." *Id.* at 287. The defendants also cited legal authority to support their position that KDOC's policy of using interest to pay for fees did not violate the takings clause. *See id.* at 251-52 (citing *Hatfield v. Scott*, 306 F.3d 223, 229 (5th Cir. 2002); *Vance v. Barrett*, 345 F.3d 1083, 1089-90 (9th Cir. 2003)).[10] Mr. Sperry did not offer any legal authority to support his position that KDOC's

---

[10] In *Hatfield*, 306 F.3d at 229, the court rejected a similar challenge by an inmate to the prison's policy of using earned interest from the inmate trust fund account to pay for the cost of administering the fund, including fees to financial institutions. The court held that "where earned interest is used to pay for the administration of a fund providing a benefit to prisoners, there is no 'taking' violative of the Fifth Amendment." *Id.* In *Vance*, 345 F.3d at 1089, an inmate challenged the prison's policy of using accrued interest to pay for applicable charges associated with the inmates' accounts. The court concluded that prison officials could deduct reasonable expenses incurred in creating and maintaining the inmates' accounts without running afoul of the takings clause. *Id.* at 1089-90.

policy constituted a taking for public use.  Thus, we conclude the district court properly granted summary judgment in favor of Defendant Roberts on this claim.

## III. **CONCLUSION**

We affirm the district court's judgment.  We deny Mr. Sperry's motion for sanctions.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge